UNITED STATES of America, Appellee,

v.

James J. PRATT, Appellant, Defendant.

No. 80–1048.

United States Court of Appeals,
First Circuit.

Argued March 2, 1981.

Decided April 8, 1981.

Dennis M. Duggan, Jr., Boston, Mass., with whom David S. Mortensen, Boston, Mass., by appointment of the court, and Hale & Door, Boston, Mass., were on brief, for appellant, defendant.

John H. LaChance, Asst. U. S. Atty., Boston, Mass., with whom Edward F. Harrington, U. S. Atty., Boston, Mass., was on brief, for appellee.

Before COFFIN, Chief Judge, CAMPBELL and BREYER, Circuit Judges.

COFFIN, Chief Judge.

We affirm appellant's conviction of conspiracy to import heroin, but vacate his

special parole term. The facts, in the light most favorable to the government, reveal the following. Appellant offered one Suzanne Weiner $5000 to carry drugs into the United States. When she agreed, appellant and others accompanied her on a trip to Thailand. Weiner was arrested when she returned to the United States on September 8, 1979 and customs agents found heroin in her suitcase. Appellant returned to this country on September 11, 1979. Upon his arrival at the airport in Chicago, customs agents decided to subject him to secondary customs inspection for several reasons: he was traveling from a "source country" for drugs; he had purchased his ticket in cash; and he was wearing bulky clothes. Later the agents discovered from the customs information computer that appellant was a suspected drug courier. At the time, however, two agents led him to a windowless seven by five foot secondary inspection room adjacent to the main customs area. The record does not disclose whether this room had a door or, if it did, whether this door was closed.

The agents told appellant to empty his pockets. They conducted a pat-down but not a strip search. They also inspected his luggage, photostated documents, and questioned him about an airline ticket receipt they found bearing Weiner's name. Appellant replied that he did not know anyone named Weiner and that he had found the receipt in the next seat—an instance of a "habit of picking up things" that he corroborated by showing the agents a show program that he had collected in similar manner. Appellant was permitted to continue on his way after this secondary inspection, which lasted about 15 minutes. The next day he was arrested in Boston while meeting with Weiner.

■ Appellant first notes that he received no *Miranda* warnings in Chicago and challenges the district court's refusal to suppress evidence of his comments there. The government replies that no warnings were required because the interrogation was not "custodial" within the meaning of *Miranda v. Arizona*, 384 U.S. 436, 477–78, 86 S.Ct. 1602, 1629, 16 L.Ed.2d 694 (1966). We must decide whether the circumstances of the encounter there were of the " 'nature and setting of . . . in-custody interrogation.' " *Beckwith v. United States*, 425 U.S. 341, 346, 96 S.Ct. 1612, 1616, 48 L.Ed.2d 1 (1976) (*quoting Miranda*, 384 U.S. at 445, 86 S.Ct. at 1612). Although any interview with police will have *some* coercive aspects simply by virtue of the role that they carry out in our law enforcement system, police are not required to give *Miranda* warnings to everyone they question. *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977). This admonition has special application to airport customs inspections, where individuals approach official inquiry knowing of its greater necessity and routine. *Cf. Delaware v. Prouse*, 440 U.S. 648, 657, 99 S.Ct. 1391, 1398, 59 L.Ed.2d 660 (1979) (psychological impact of official intrusion lessened when "all are subjected to a show of the police power of the community").

■ Any person required to submit to a secondary customs search may apprehend some increased level of official suspicion. It has been decided, however, that this perception of increased official suspicion is not sufficient by itself to apply coercive pressures equivalent to custodial questioning. *See, e. g., United States v. Henry*, 604 F.2d 908 (5th Cir. 1979). The confining character of a customs questioning cell, combined with isolation with two probing inspectors, also creates an oppressive atmosphere that we do not ignore. Nevertheless, three factors convince us that the actions of the customs agents in this case may approach but do not transgress the limits that case law has permitted in the absence of *Miranda* warnings.

First, the agents' questioning was limited. They requested only an explanation of why appellant possessed a ticket receipt issued in the name of another—an objectively peculiar circumstance about which a reasonable person could have understood the agents' inquisitiveness. This contrasts with manipulative attempts to elicit confessions, *cf. United States v. McCain*, 556 F.2d

253, 256 (5th Cir. 1977) ("The whole purpose of the talk given to the defendant [about the dangers of carrying drugs internally] was to persuade the defendant to confess."), or to obtain inconsistent stories by separately interrogating associated suspects. *See United States v. Garcia*, 496 F.2d 670, 672 (5th Cir. 1974), *cert. denied*, 420 U.S. 960, 95 S.Ct. 1347, 43 L.Ed.2d 436 (1975). Limited and straightforward questioning is less apt to intimidate than is the obvious use of entrapping devices or ploys.

Second, the questioning was routine. No events transpired to create or to symbolize a high and evident degree of suspicion about the appellant by the agents. For instance, they discovered no contraband. *See, e. g., United States v. De La Cruz*, 420 F.2d 1093, 1095 (7th Cir. 1970). Neither did they conduct a strip search. *See, e. g., United States v. Salinas*, 439 F.2d 376, 380 (5th Cir. 1971). The pat-down and pocket inspection did bespeak an attenuated message of similar effect, but it is our judgment that this factor in the context of this case is insufficient to push the circumstances into "custodial interrogation." Nor have we seen any cases that have so held.

Finally, the duration of the encounter—though never a singly determinative factor—here supports a characterization of routine customs inquiry rather than custodial interrogation. *Cf. Borodine v. Douzanis*, 592 F.2d 1202, 1208 (1st Cir. 1979) (holding ten minute encounter not custodial, and citing similar cases involving 17 and 20 minute interrogations); *United States v. Garcia*, 496 F.2d 670, 673 (5th Cir. 1974) (detention "for at least an hour" held custodial), *cert. denied*, 420 U.S. 960, 95 S.Ct. 1347, 43 L.Ed.2d 436 (1975). Therefore we hold that appellant was not entitled to *Miranda* warnings and that use of evidence from this questioning was not error.[1]

Appellant next argues that his appeal has been delayed by a nine month delay in obtaining pre-trial and trial transcripts. The reason for this delay does not appear on the record. Lamentable though it may be, such delays are all too common. Although they can rise to the level of a due process violation, *see Layne v. Gunter*, 559 F.2d 850, 851 (1st Cir. 1977) (delay of more than three years), *cert. denied*, 434 U.S. 1038, 98 S.Ct. 776, 54 L.Ed.2d 787 (1978); *Odsen v. Moore*, 445 F.2d 806, 807 (1st Cir. 1971) ("nearly three years"), appellant cites no precedent involving a length of time comparable to that here. *Cf. Rheuark v. Shaw*, 628 F.2d 297, 302–03 (5th Cir. 1980) (assuming but not deciding that a delay of nearly two years violates due process). We decline to hold this delay unconstitutional, at least in the absence of exacerbating factors, *see id.* at 303 n.8, and in light of the remedies that appellant seeks: reversal of judgment and either entry of judgment for him or new trial. *Cf. Layne v. Gunter*, 559 F.2d at 852 (one objective of remedy is "to assure expeditious justice to individuals"); *Morales Roque v. People of Puerto Rico*, 558 F.2d 606, 607 (1st Cir. 1976) (discussing alternative remedies to effectuate "the due process right to a reasonably prompt appeal" and looking to "release only as a last resort").

Finally, the district court imposed a three-year special parole term for violation of 21 U.S.C. § 963. The Supreme Court subsequently decided *Bifulco v. United States*, 447 U.S. 381, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980). The government concedes appellant's point that *Bifulco* requires us to remand this case to the district court for the limited purpose of vacating the special parole term. *See United States v. Bienvenue*, 632 F.2d 910, 915–16 (1st Cir. 1980).[2]

---

1. We regard as beside the point the parties' dispute over the time at which the customs agents learned of the computer identification of appellant. The issue of whether an interrogation is "custodial" turns on the objective features of the encounter that appear to the questioned party, not on the examiners' unexpressed personal knowledge or attitudes. *See*

*Beckwith v. United States*, 425 U.S. 341, 346–47, 96 S.Ct. 1612, 1616, 48 L.Ed.2d 1 (1976); *Borodine v. Douzanis*, 592 F.2d 1202, 1206 & n.2 (1st Cir. 1979).

2. Appellant raises a number of evidentiary and procedural points about which he did not object at trial. We have examined these and find

*Judgment affirmed in part, vacated in part, and remanded for further proceedings.*

that none amount to plain error. Fed.R.Crim. Proc. 52(b). Similarly, appellant also complains that his motion for transfer of location of his incarceration was denied. Our December 4, 1980 action on this issue is controlling.