UNITED STATES of America, Appellant,

v.

**Amado Fernandez VENTURA
and Milagros A. Cedeno,
Defendants, Appellees.**

No. 95–1871.

United States Court of Appeals,
First Circuit.

Heard Feb. 27, 1996.

Decided May 30, 1996.

David S. Kris, Brookline, MA, with whom Guillermo Gil, United States Attorney, Antonio R. Bazan, Assistant United States Attorney, and Nina Goodman, Washington, DC, were on brief for appellant.

Linda Backiel, New York City, with whom Carlos Ramirez Fiol, San Juan, PR, was on brief for appellees.

Before TORRUELLA, Chief Judge, COFFIN, Senior Circuit Judge, and CYR, Circuit Judge.

COFFIN, Senior Circuit Judge.

After deplaning at San Juan International Airport, defendants Amado Fernandez Ventura and Milagros Cedeno were questioned by Customs agents and arrested for illegally transporting money, in violation of 31 U.S.C. § 5316. They filed a motion to suppress all inculpatory statements made in the absence of *Miranda* warnings, which was granted. The government appealed. Having concluded that the district court applied an erroneous legal test, we remand for reconsideration of the suppression motion under the proper standard.

## BACKGROUND

### Facts

Because of his frequent travel between St. Maarten and Puerto Rico, Fernandez was on a "lookout" list kept by the Customs Service. On November 12, 1994, after clearing immigration, Fernandez was taken to a secondary Customs inspection area. One agent asked Fernandez if he was carrying any money; Fernandez responded "$8000." Another agent searched his suitcase, discovered women's lingerie, and asked whom it belonged to. Fernandez answered "mi mujer," which colloquially means "my wife" or "my woman." Fernandez was directed to find her.

Cedeno, Fernandez's girlfriend, had already cleared customs but was still within the customs area. Fernandez, while accompanied by an agent, located Cedeno and returned with her to the secondary inspections area. On the way there, the agent asked Cedeno whether she was carrying any money. She replied that she was carrying approximately $9,000.

A search of the defendants revealed that the actual amount in their possession was $16,166. In response to further questioning, Fernandez revealed that the money belonged to his money exchange company, of which he was president. The agents then placed the couple under arrest and read them their *Miranda* rights.

The defendants were charged with failing to report the transportation of monetary instruments in excess of $10,000 in violation of 31 U.S.C. § 5316, and making false statements to the Customs Service in violation of 18 U.S.C. § 1001. Upon their motion alleging a *Miranda* violation, the court suppressed all statements made by the defendants after Cedeno was asked whether she was carrying any money. *See United States v. Fernandez Ventura,* 892 F.Supp. 362 (D.P.R.1995).

### The District Court's Opinion

The district court delineated four relevant inquiries for determining whether the rule enunciated in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), has been violated:

1.  Was the person in "custody"?
2.  Was the person "interrogated"?
3.  Had the Fifth Amendment right against self-incrimination attached?
4.  Had the Sixth Amendment right to counsel attached?

Under the court's analysis, a violation occurs when "each element (custody, un-Mirandized interrogation, and attached Fifth and Sixth

Amendment rights) ... exist[s] simultaneously."

The court considered each factor. It stated that custody "depends exclusively upon whether a reasonable person in the defendant's position would have felt free to leave." Because "Customs is an inherently coercive environment [in that] an individual is never free to simply walk away," the court concluded that defendants were in "custody." In the court's view, "interrogation" was satisfied because "[t]he parties do not dispute that all of the questioning conducted by Customs officers in this case constituted 'interrogation' as defined and explained in *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980)."

Most of the court's analysis focused on whether the rights to silence and counsel had attached. The court held that "in the context of Customs interrogation, these rights attach when the questioning has ceased to be purely investigatory and has become accusatory." Elaborating further, the court explained

[This] has both an objective and subjective element. The objective element[ ] requires that officers provide *Miranda* warnings when there exists probable cause to make an arrest.... The subjective element requires that officers provide *Miranda* warnings when it is apparent that the interrogating officer's purpose in questioning is not purely investigatory.

As applied in the Customs setting:

when the questioning extends beyond that asked of the average Customs interrogee at either primary or secondary inspection, we infer that the interrogation has become sufficiently focused upon the interrogee to require *Miranda* warnings.

Applying the facts to these legal standards, the court concluded that the "interrogation turned accusatorial at the time Inspector Fisher asked Cedeno whether she was carrying any money." At that point, the "investigation had clearly narrowed to a particular crime with particular defendants,

based on what we infer to have been substantial, particularized suspicions." Accordingly, the court determined, all ensuing statements violated *Miranda,* and were properly suppressed.

## DISCUSSION

■ The government claims that the court's test for a *Miranda* violation was legally erroneous. Defendants concede that the court's approach was novel, but argue that, taken as a whole, it comports with settled precedent. Our task in this appeal is straightforward: to set forth the *Miranda* test as derived from Supreme Court and First Circuit caselaw and assess whether the district court followed it. Our standard of review is *de novo. See United States v. Lewis,* 40 F.3d 1325, 1332 (1st Cir.1994).

■ *Miranda* warnings must be given before a suspect is subjected to custodial interrogation. *United States v. Taylor,* 985 F.2d 3, 7 (1st Cir.1993). The custodial interrogation inquiry necessarily demands determination of its two subsidiary components: 1) custody and 2) interrogation. *See Illinois v. Perkins,* 496 U.S. 292, 297, 110 S.Ct. 2394, 2397–98, 110 L.Ed.2d 243 (1990) ("It is the premise of *Miranda* that the danger of coercion results from the interaction of custody and official interrogation.").

■ The custody determination is the initial and, generally, the central inquiry: it is "the touchstone to the need for *Miranda* warnings." *United States v. Quinn,* 815 F.2d 153, 160 (1st Cir.1987). Since *Miranda,* the Court has enunciated several general definitions of custody, but the ultimate inquiry is whether there was "a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Thompson v. Keohane,* 511 U.S. 318, ——, 116 S.Ct. 457, 465, 133 L.Ed.2d 383 (1995) (quotation marks and citations omitted); *Stansbury v. California,* 511 U.S. 318, ——, 114 S.Ct. 1526, 1529, 128 L.Ed.2d 293 (1994) (*per curiam* ) (same).[1]

---

1. This specific formulation was first articulated in *California v. Beheler,* 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983) (*per curiam* ) and *Minnesota v. Murphy,* 465 U.S. 420,

430, 104 S.Ct. 1136, 1143–44, 79 L.Ed.2d 409 (1984). It served to clarify the Court's conception that *Miranda* applied after a "person has been taken into custody or otherwise deprived of

In order to assess the "restraint on freedom of movement," a court must examine all the circumstances surrounding the interrogation. This test is objective: the only relevant inquiry is "how a reasonable man in the suspect's shoes would have understood his situation."[2] *Stansbury,* 511 U.S. at ——, 114 S.Ct. at 1529 (quoting *Berkemer v. McCarty,* 468 U.S. 420, 442, 104 S.Ct. 3138, 3151–52, 82 L.Ed.2d 317 (1984)). The subjective beliefs held by the interrogating officers or the person being interrogated are not germane. *Id.*

Relevant circumstances include "whether the suspect was questioned in familiar or at least neutral surroundings, the number of law enforcement officers present at the scene, the degree of physical restraint placed upon the suspect, and the duration and character of the interrogation." *United States v. Masse,* 816 F.2d 805, 809 (1st Cir. 1987) (quoting *United States v. Streifel,* 781 F.2d 953, 961 n. 13 (1st Cir.1986)). *See also United States v. Pratt,* 645 F.2d 89, 90–91 (1st Cir.1981) (discussing factors in the context of a secondary customs search).[3]

Determining what constitutes custody can be a "slippery" task. *See Oregon v. Elstad,* 470 U.S. 298, 309, 105 S.Ct. 1285, 1293, 84 L.Ed.2d 222 (1985). Through case by case development, however, courts have carved out certain circumstances as legally insufficient to constitute custody. *See, e.g., Berkemer,* 468 U.S. at 437–40, 104 S.Ct. at 3148–50 (routine traffic stops not subject to dictates of *Miranda* ); *United States v. Tajeddini,* 996 F.2d 1278, 1288 (1st Cir.1993) (routine Customs questioning); *Pratt,* 645 F.2d at 90–91 (same). Indeed, in the Customs context, we have stated that questions from officials are especially understood to be a necessary and important routine for travelers arriving at American entry points. *See Pratt,* 645 F.2d at 90. *See also United States v. Moya,* 74 F.3d 1117, 1120 (11th Cir.1996). This understanding cuts against the potentially coercive aspect of the Customs inquiry, and lessens the need for *Miranda* warnings.

In *Pratt,* we made clear that even secondary inspection does not *per se* constitute custodial interrogation. We acknowledged that though "[a]ny person required to submit to a secondary customs search may apprehend some increased level of official suspicion[,] ... this perception ... is not sufficient by itself to apply coercive pressures equivalent to custodial questioning." 645 F.2d at 90. There, we found that the limited and routine nature of the questioning and short duration of the encounter militated against requiring *Miranda* warnings. The line between routine Customs questioning and custodial interrogation is not easily drawn, but it requires careful examination of all the circumstances.

The other component of custodial interrogation is, of course, interrogation. Interrogation refers to both express questioning and its "functional equivalent," which includes "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis,* 446 U.S. 291, 301, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980) (footnotes omitted). Again the inquiry is objective: how would the officer's statements and conduct be perceived by a reasonable person in the same circumstances? *See Taylor,* 985 F.2d at 7.[4] Here, quite clearly, if

---

his freedom of action in any significant way." *Miranda,* 384 U.S. at 444, 86 S.Ct. at 1612 (footnote omitted).

2. In *Keohane,* the Court made clear that the ultimate determination of custody is a mixed question of fact and law. The initial examination of the "totality of the circumstances" is factual. The second inquiry, however—whether, objectively, these circumstances constitute the requisite "restraint on freedom of movement of the degree associated with a formal arrest"—requires the "application of the controlling legal standard to the historical facts." —— U.S. at —— & n. 11, 116 S.Ct. at 465 & n. 11.

3. This is not an exhaustive list. Other courts have identified other factors significant to a custody determination. *See Sprosty v. Buchler,* 79 F.3d 635, 641 (7th Cir.1996) (citing cases).

4. However, an officer's knowledge " 'concerning the unusual susceptibility of a defendant to a particular form of persuasion might be an important factor in determining' what the [officer] reasonably should have known." *Pennsylvania*

defendants were in custody, the officers' express questions constituted interrogation.[5]

■ In summary, *Miranda* warnings ensure that an individual subject to custodial interrogation has a "full opportunity to exercise the privilege against self-incrimination." *Miranda*, 384 U.S. at 467, 86 S.Ct. at 1624. To find custodial interrogation, the court must first examine all the circumstances surrounding the exchange between the government agent and the suspect, then determine from the perspective of a reasonable person in the suspect's shoes whether there was 1) a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest and 2) express questioning or its functional equivalent.

We will not dwell on all the problems in the district court's version of the *Miranda* inquiry, but point out a few significant errors. First, the court took the ultimate factual and legal question—were defendants in custody?—and treated it in a *per se* manner: because travelers "may not simply walk away from an interrogating officer," they are in custody. This is simply wrong. Individuals subject to routine traffic stops or customs inspections, circumstances which are not custodial, are rarely free to leave while being questioned by an officer. The relevant inquiry, however, as stated above, is whether there was an arrest or restraint on freedom of movement of the degree associated with a formal arrest.

The court's further assertion that "all reasonable people would agree that Customs is an inherently custodial setting, regardless of the circumstances of the interrogation," is directly contrary to our decisions in *Tajeddini* and *Pratt* and runs counter to the proper approach articulated by the Supreme Court. A custody determination requires inquiry into *all* circumstances surrounding the inter-

rogation. *See Keohane*, —— U.S. at —— & n. 11, 116 S.Ct. at 465 & n. 11.

Finally, we note that the court, relying on outmoded circuit opinions, discussed certain factors, such as whether there was probable cause to make an arrest and the officers' focus on the defendants, which are not relevant to a *Miranda* inquiry. At one time, certain courts found these factors relevant, *see, e.g., United States v. Henry*, 604 F.2d 908, 915 (5th Cir.1979) (articulating a four-factor test for custody that included these factors), but subsequent Supreme Court decisions rejected this approach. *See, e.g., Berkemer*, 468 U.S. at 442, 104 S.Ct. at 3151–52 (emphasizing the objective nature of the inquiry). Indeed, in light of these cases, the Fifth Circuit repudiated its four-factor test, announcing that "[p]robable cause and focus become material to the custody inquiry only when they influence a reasonable person's perception of the situation." *United States v. Bengivenga*, 845 F.2d 593, 596–97 (5th Cir.1988) (*en banc* ) (footnote omitted).

Defendants argue that the court's test, taken as a whole, is consistent with our precedent. We disagree. Although there may be tests which, though formulated differently, approximate the proper standard, this is not one of them. Accordingly, we remand this case to the district court for application of the correct legal test. On remand, the court may take additional evidence on the relevant factual issues. *See Streifel*, 781 F.2d at 962.

*The order suppressing evidence is vacated. We remand to the district court for proceedings consistent with this opinion.*

---

v. *Muniz*, 496 U.S. 582, 601, 110 S.Ct. 2638, 2650, 110 L.Ed.2d 528 (1990) (quoting *Innis*, 446 U.S. at 302 n. 8, 100 S.Ct. at 1690 n. 8).

5. We note that not all questioning of in-custody suspects constitutes interrogation triggering the *Miranda* protections. For example, many courts recognize a "routine booking interrogation" exception to the *Miranda* rule. *See United States v. Doe*, 878 F.2d 1546, 1551 (1st Cir.1989) (citing

cases). Requesting biographical information—name, address, *etc.*—rarely elicits an incriminating response and serves a legitimate administrative need. *Id.* If, however, the officer seeks to elicit information that may incriminate, the exception does not apply. *Id.* We express no opinion on whether this narrow *Miranda* exception applies in the Customs setting.