**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0057n.06
Filed: January 24, 2007

**No. 03-6446**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

RONNIE LEE HOWARD,

     Defendant-Appellant.

_____/

**ON APPEAL** FROM THE
UNITED STATES DISTRICT
COURT FOR THE
EASTERN DISTRICT OF
KENTUCKY

**BEFORE:**    **BATCHELDER and MOORE, Circuit Judges; and COHN, District Judge.**[*]

**AVERN COHN, District Judge**. This is a criminal case. Defendant-Appellant Ronnie Lee Howard appeals from his conviction for felon in possession of a firearm and felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1) and § 924(e)(1) and his 293 month sentence. Defendant, through counsel,[1] raises several issues on appeal and defendant raises two

---

[*]The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

[1]After filing defendant's brief on appeal, counsel moved under *Anders v. California*, 386 U.S. 738 (1967) for permission to withdraw. Defendant separately moved to file a *pro se* supplemental brief and for the appointment of counsel. The motion to withdraw was denied and the Clerk was directed to reinstate the briefing schedule. Defendant's *pro se* motion to file a supplemental brief was granted and the motion for appointment of new counsel was denied.

issues *pro se.* The issues encompass evidentiary issues, trial procedure issues, and sentencing and appellate issues. For the reasons that follow, defendant's conviction is AFFIRMED and the case is REMANDED for resentencing.

## I. BACKGROUND

On September 5, 2001, a Kentucky State Police trooper received a call from Larry Brock, an agent with the United States Bureau of Alcohol, Tobacco, and Firearms (ATF), who stated that he had received information from a confidential informant (CI) that defendant, a convicted felon, was shooting a gun in his backyard. The trooper responded to the call with another trooper. The two went to defendant's residence. Defendant was not home. The troopers asked defendant's wife, Lila Howard, if there was a gun in the house. She responded that there was not, and gave the troopers permission to search the residence. The trooper's search found a Marlin Glenfield .22 rifle located in a bedroom closet. Lila Howard subsequently told the troopers that she, Howard, and another person had previously shot the rifle in the backyard of the residence.

The police then obtained a search warrant and returned to the Howard's residence on September 14, 2001. AFT Agent Brock took part in the search. On this occasion, the officers located a partial box of .22 caliber ammunition, two rounds of Winchester .380 caliber ammunition, and a Remington .12 gauge shotgun shell. During the execution of the search warrant, the officers again spoke with Lila Howard, who repeated that it was she; Howard, and another person who shot the guns confiscated from the home.

Defendant was also interviewed during the search by Agent Brock. Although the initial interview was not recorded, a subsequent statement from defendant was recorded. Agent Brock

2

testified that during the initial interview, defendant denied having shot the .22 caliber rifle, but admitted to firing a New England 12-gauge shotgun. In defendant's subsequent recorded statement, however, he wavered on whether he actually fired the shotgun and, at some point, stated that he was confused.

On December 6, 2001, Agent Brock attempted to serve defendant with a grand jury subpoena to fingerprint and photograph him while he was incarcerated on state charges. Defendant had not been charged with any federal crimes at the time. When Agent Brock explained that he was there to serve a subpoena, defendant said "All that stuff was mine." Agent Brock then asked defendant what he was talking about and asked him if he meant the items found in his home. Defendant responded something to the effect of "whatever you have charged me with." Agent Brock explained that defendant had not been charged and that if defendant wanted to discuss anything further, he would be advised of his rights. Defendant declined to say anything further.

A grand jury indicted defendant and Lila Howard for being felons in possession of a firearm and ammunition. Lila Howard pled guilty and agreed to testify against defendant. Before trial, defendant moved to suppress the rifle and ammunition as illegally seized. He also challenged the admissibility of his confession. All of his motions were denied. During *voir dire*, defendant moved for a mistrial due to a potential juror's comments. The motion was denied. Defendant was convicted as charged. A motion for acquittal was also denied.

At sentencing, defendant was classified as an armed career offender, which raised his offense level to 33. Combined with a criminal history category of VI, the resulting guideline

3

sentence was 235 to 293 months. The district court sentenced defendant to the top of the range, over defendant's numerous objections.

Defendant appeals.

## II. ANALYSIS

The government has organized the several issues on appeal in the following categories: (1) evidentiary issues, (2) trial procedure issues, and (3) sentencing and appellate issues. We address the issues in the order presented by the government.

### A. Evidentiary Issues

### 1. Motion to Suppress

Defendant argues that the district court should have granted the motion to suppress the ammunition because the warrant for the September 14, 2001, search was not supported by a sufficient affidavit. Defendant says that the affidavit contains no information regarding the confidential informant's reliability and the information was not corroborated. In his *pro se* brief, defendant argues that the district court should have granted the motion to suppress the rifle because his wife, Lila Howard, was under the influence of drugs and could not voluntarily consent to the search on September 5, 2001.

The district court's ruling on the motion to suppress is subject to a two-part review. We review a district court's factual findings under the clearly erroneous standard of review and its legal conclusions *de novo*. *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005). We also view the evidence in the light most favorable to the government. *United States v. Harris*, 255 F.3d 288, 291 (6th Cir. 2001).

4

We first address the warrantless search of the Howard residence on September 5, 2001 which yielded the .22 caliber rifle. Defendant argues that the search was invalid because Lila Howard was intoxicated at the time and was therefore unable to give consent. Although it is not clear that defendant raised this argument in his motion to suppress, the issue was presented to the district court during the hearing on the motion. In denying the motion, the district court noted that the government presented witnesses who testified as to Lila Howard's consent and defendant had an opportunity to cross-examine these witnesses. After hearing all of the testimony, the district court held that "Lila Howard consented to the September 5, 2001 search, and therefore evidence found during the search on that date would not be suppressed." JA at p. 53-54. Moreover, the government has not argued that this issue was waived. Thus, we will address the issue.

The Fourth Amendment states that "no warrants shall issue but upon probable cause, supported by oath or affirmation ····" U.S. Const. amend. IV. "It is well-settled that a person may waive his [or her] Fourth Amendment rights by consenting to a search. Consent to a search may be in the form of words, gesture, or conduct. In whatever form, consent has effect only if it is given freely and voluntarily." *United States v. Carter*, 378 F.3d 584, 587 (6th Cir. 2004) (en banc) (citations and internal quotation marks omitted). Valid consent must "be determined from the totality of all the circumstances." *Id*.

The defendant asserts that Lila Howard was under the influence of drugs at the time of the search. However, there is no evidence in the record to support the assertion. Here, the district court evaluated the witnesses' testimony and determined that Lila Howard had given consent. The district court "is given wide latitude to assess the credibility of witnesses." *United States v.*

*Haynes*, 301 F.3d 669, 679-80 (6th Cir. 2002) (citation omitted). We find no basis to conclude that Lila Howard's consent was involuntary. As such, the district court did not err in declining to suppress the .22 caliber rifle.

We also note that, despite defendant's argument to the contrary, the United States Supreme Court's decision in *Georgia v. Randolph*, 126 S.Ct. 1515 (2006), does not apply. In *Randolph*, the Supreme Court held that a warrantless search of a residence, which was conducted on the basis of the defendant's wife's consent, was invalid as to the defendant who was physically present at the time of the search and expressly refused to consent. Here, there is no evidence that defendant was present at the time of the search or that he refused to consent. *Randolph* does not require that the police specifically determine whether defendant was present in the home before conducting the search after they obtained Lila Howard's consent.

Next, as to defendant's argument regarding the sufficiency of the affidavit in support of the search warrant, in order to demonstrate probable cause to support issuance of a search warrant, the affidavit must contain facts that indicate "a fair probability that evidence of a crime will be located on the premises of the proposed search." *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005) (quoting *United States v. Bowling*, 900 F.2d 926, 930 (6th Cir. 1990)). This is determined by the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 230 (1983). Appellate review of the sufficiency of the evidence supporting probable cause is limited to the information presented in the four-corners of the affidavit. *Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 565 n.8 (1971).

The affidavit states in relevant part:

1. The [CI] further stated that Howard was a convicted felon and the CS had previously observed Howard shooting a .22 caliber rifle at the rear of his (Howard's) residence. The [CI] said that Howard owned a white Mercury Cougar bearing Kentucky license #888 GTR. ...

2. On September 5, 2001, the affiant was again contacted by the confidential source. The CS stated that Howard and his girlfriend were currently at the rear of their residence shooting a rifle at targets in the backyard. ...

The government concedes that the affidavit "does not go into great detail about the confidential source's past reliability." Indeed, the affidavit contains no information regarding the reliability of the CI. When confronted with hearsay information from a confidential informant, "a court must consider the veracity, reliability, and the basis of knowledge for that information as part of the totality of the circumstances for evaluating the impact of that information ...·" *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003). "[I]n the absence of any indicia of the informants' reliability, courts insist that the affidavit contain substantial independent police corroboration." *United States v. Frazier*, 423 F.3d 526, 532 (6th Cir. 2005) (citations omitted). We find such corroboration. The affidavit notes that a registration check confirmed that Howard owned a white Mercury Cougar bearing license number 888-GTR. The affidavit also noted that a prior search of the home, which we have determined was valid based on Lila Howard's consent, yielded a .22 caliber rifle. The affidavit also states that a review of state court records revealed that both defendant and Lila Howard were convicted felons. We agree with the district court that the affidavit was supported by probable cause.

### 2. Defendant's Confession

Defendant asserts that the district court erred by concluding that his confession to Agent Brock while in state custody, namely the statement that "All that stuff was mine" was voluntary

and not made in violation of *Miranda*. Defendant alternatively argues that the district court should have charged the jury on the issue of voluntariness under 18 U.S.C. § 3501(a).

We review the district court's factual findings concerning the confession for clear error, while the issue of the voluntariness is reviewed *de novo*. *United States v. Marks*, 209 F.3d 577, 581 (6th Cir. 2000).

In *Miranda v. Arizona*, 384 U.S. 436, 444 (1966), the Supreme Court stated that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Thus, *Miranda* warnings are required only when the suspect is subject to custodial interrogation. *United States v. Swanson*, 341 F.3d 524, 528-30 (6th Cir. 2003). Suppression is not necessary if the defendant has not been subjected to "either express questioning or its functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980). "Interrogation" for purposes of *Miranda*, encompasses "not only ⋯ express questioning, but also ... any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id*. at 301. However, "where a defendant makes a voluntary statement without being questioned or pressured by an interrogator, the statements are admissible despite the absence of Miranda warnings." *United States v. Murphy*, 107 F.3d 1199, 1204 (6th Cir. 1997).

Here, the district court conducted a hearing outside the presence of the jury in which Agent Brock testified that he went to the jail where defendant was being held on state charges. Agent Brock explained he was there to collect fingerprints and photographs. Defendant

8

approached Agent Brock and stated "All that stuff was mine," without any prompting. Agent Brock then asked defendant, 'What do you mean?" which was an attempt to clarify defendant's statement, not to coerce defendant. Defendant then replied "whatever you have charged me with." Agent Brock then informed defendant that he had not been charged with anything and that if he wished to speak further, he would have to be advised on his *Miranda* rights. Defendant made no further statements. Defendant does not challenge the factual truth of his statement, but rather claims that it was involuntary. There is no indication whatsoever that defendant's statement was anything but voluntary and spontaneous. The district court did not err in admitting it. Moreover, even if the district court erred, the error was harmless in light of the other evidence of defendant's guilt, including the location of the ammunition and firearm in his residence and Lila Howard's testimony. *See United States v. Mack*, 258 F.3d 548, 555 (6th Cir. 2001).

### 3. Marital Privilege

Defendant argues that the district court erred in refusing to recognize the confidential marital communications priviledge and by permitting Lila Howard to testify against defendant about a confidential letter he sent to Lila Howard while he was in prison. We review this issue for an abuse of discretion. *See United States v. Price*, 329 F.3d 903, 905 (6th Cir. 2003).

Under the confidential marital communications privilege, the defendant spouse "may exclude the testimony of a witness spouse concerning confidential marital communications." *United States v. Gray*, 71 Fed. Appx. 485, 488 (6th Cir. 2003) (citing *United States v. Sims*, 755 F.2d 1239, 1241 (6th Cir. 1985)). However, an exception exists for "conversations regarding joint ongoing or future patently illegal activity..." *Sims*, 755 F.2d at 1243.

9

Here, the district court concluded that the exception applied. We agree. In the letter, defendant used a ficticious name and addressed Lila Howard as "sister," stating he was facing 19-22 years. He proposed that if "no one" testified that he was living with her, he could beat the charges against him. He would then testify at her trial that the gun was his because the worst he could get for lying was five years. Defendant is clearly discussing the charges against him and Lila Howard and attempting to convince her to not testify against him at trial. There is no doubt the letter contains communications about a joint future patently illegal activity. Defendant's statement about a possible sentence for lying indicates that he was aware that their testimony would be perjury.

Defendant also argues, rather perfunctorily, that because he and Lila Howard were not charged as co-conspirators, the district court erred by finding that defendant had used the letter to obstruct justice and influence Lila Howard's testimony. The argument is not supported by any authority. We therefore decline to address it. *See United States v. Elder*, 90 F.3d 1110, 1119 (6th Cir. 1996) (stating that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").

### 4. Agent Brock's Statement

Defendant argues that the district court erred by refusing to admit into evidence either a tape or transcript of a statement he made to Agent Brock, thus limiting his ability to cross-examine Agent Brock. At trial, Agent Brock testified that he interviewed defendant at the time of the September 14, 2001, search and he admitted that he had fired a shotgun which was later traded at a flea market by a third party for a Marlin .22 rifle. Defendant sought to impeach this

testimony by introducing a tape or transcript of his later statement in which he allegedly said he had not shot a shotgun and had been confused earlier.

The district court refused to admit the tape or transcript because the second statement was hearsay and made about an hour after the first statement. However, the district court permitted counsel to ask Agent Brock if defendant later stated he had been confused when he gave the earlier statement, to which Agent Brock replied that defendant had not.

We review the district court's ruling for an abuse of discretion. *United States v. Payne*, 437 F.3d 540, 544 (6th Cir. 2006). We find no error in the district court's decision. The statement could not be admitted as non-hearsay for impeachment under Fed. R. Evid. 801(d)(1) because Rule 801(d)(1) permits a witness to be impeached with his or her own inconsistent statement. Defendant's statements do not show Agent Brock's testimony was inconsistent, but rather show that defendant made inconsistent statements. The rule does not provide for the admission of an inconsistent statement by another witness. Second, defendant's statement was not admissible under the exception for when the declarant is unavailable under Fed. R. Evid. 804.

Moreover, the statement was not admissible under the doctrine of completeness. This doctrine allows a party who is prejudiced by an opponent's introduction of part of a "document, or a correspondence, or a conversation," to enter so much of the remainder as is necessary to explain or rebut a misleading impression caused by the "incomplete character" of that evidence. *United States v. Costner*, 684 F.2d 370, 373 (6th Cir. 1982) (quoting *United States v. Littwin*, 338 F.2d 141, 145 (6th Cir.1964)). It was partially codified as Federal Rule of Evidence 106:

> When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

11

The doctrine, however, does not "make inadmissible evidence admissible." *United States v. Shaver*, 89 Fed. Appx. 529, 532 (6th Cir. Feb. 27, 2004) (unpublished) (citations omitted). "Exculpatory hearsay may not come in solely on the basis of completeness." *Id.* Because no hearsay exceptions allowed the introduction of defendant's later statement to Agent Brock, it cannot be admitted under the doctrine of completeness.

Finally, we note that even assuming the statement was admissible, there was no prejudice given the substantial evidence of defendant's guilt. *See Argentine v. United Steelworkers of America*, 287 F.3d 476, 486 (6th Cir. 2002).

### 5. Confrontation Clause

Defendant argues that his right to confrontation was violated because he did not have an opportunity to cross-examine the CI Agent Brock referred to at trial. Contrary to defendant's contention, review of the record does not reveal that defendant objected to Agent Brock's testimony in this regard. As such, we review the issue for plain error. *United States v. Cromer*, 389 F.3d 662, 672 (6th Cir. 2004).

"In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const., amend. VI. This right includes the right to cross-examine those witnesses. *United States v. Martin*, 920 F.2d 393, 396 (6th Cir. 1991). The Confrontation Clause bars the admission of testimonial statements unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant. *See Crawford v. Washington*, 541 U.S. 36, 59 (2004). Under *Crawford*, information provided by a confidential source may constitute testimony for purposes of the Confrontation Clause.

12

*Crawford*, however, does not apply here. No statements made by the CI were before the jury. In other words, neither Agent Brock nor any other law enforcement personnel testified as to any testimonial statement by the CI. Rather, the testimony was simply that the officers had been given information about defendant's residence from a CI. Moreover, the testimony was merely background. Under these circumstances, defendant's confrontation right was not violated. *See Cromer*, 389 F.3d at 676.

### B. Trial Procedure Issues

### 1. Motion for Mistrial

Defendant argues that the district court erred in denying his motion for a mistrial based on a prospective juror's comments during *voir dire*. We review the denial of the motion for a mistrial for an abuse of discretion. *United States v. Knipp*, 963 F.2d 839, 845 (6th Cir. 1992).

During *voir dire*, the following colloquy took place between defendant's counsel and a prospective juror:

| | |
|---|---|
| Defense counsel: | The fact that you know Zoro [a potential witness], would that influence– |
| Prospective Juror: | I wouldn't believe the man if he laid his hands on a stack of bibles. |
| Defense counsel: | You wouldn't? |
| Prospective Juror: | I've had dealings with Zoro before. |

JA at p. 132. After the prospective juror's remark, defendant's counsel moved for a mistrial at side bar. The district court determined that before ruling on the motion, it would ask some follow-up questions of the entire panel and would excuse the prospective juror for cause, but not until others are excused for cause, in order to not call undue attention to the remarks. The district court then asked some questions to the entire panel as to whether they could be fair and impartial

13

and cautioned the panel "to not give any particular witness any more credibility or less credibility based upon the *voir dire*" and also asked whether anyone would give more or less credibility to a witness that might testify based on responses from other panel members. The district court then asked both counsel if they had any additional follow up questions; defendant's counsel replied she did not.

In denying defendant's motion, the district court found that based on the circumstances surrounding the prospective juror's statement and the follow-up questions, the panel was not unduly prejudiced. We agree. In *Knipp*, *supra*, we held that the district court properly denied a motion for mistrial after a prospective juror expressed a general opinion as to a witness's credibility. The prospective juror stated "I have known [the witness] all my life. I believe everything he tells me. He always tells me when his corn is ready." *Id*. at 845. The prospective juror was then excused for cause and the district court gave a curative instruction to the jury. As in *Knipp*, the prospective juror's comment was a general opinion as to a witness's credibility and the district court asked follow-up questions in order to ensure the panel had not been adversely affected by the comment. No juror expressed reluctance as to whether they could be fair and impartial. Additionally, the witnesses's testimony was not pivotal to the case. He testified that he had never seen defendant with a gun and that Lila Howard had a reputation for untruthfulness but had never lied to him. Overall, the district court did not abuse its discretion in denying the motion for mistrial.

## 2. Motion for Judgment of Acquittal

Defendant argues that the district court erred in denying his motion for judgment of acquittal. We review the decision *de novo*. *United States v. Keeton*, 101 F.3d 48, 52 (6th Cir.

14

1996). "In reviewing the denial of a motion for acquittal, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Landham*, 251 F.3d 1072, 1083 (6th Cir. 2001)(quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

> 18 U.S.C. § 922(g) provides in pertinent part:
>
> It shall be unlawful for any person-who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year; ... to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1). The essential elements of the crime of being a felon in possession of a firearm or ammunition are: (1) that the defendant had a previous felony conviction, (2) that the defendant possessed a firearm or ammunition, and (3) that the firearm or ammunition traveled in or affected interstate commerce. *See United States v. Walker*, 160 F.3d 1078, 1087 (6th Cir. 1998).

Here, defendant admitted that the firearm and ammunition traveled in interstate commerce and that he had previously been convicted of a felony. Contrary to defendant's argument, the fact that the firearms and ammunition were found in his home was not the only evidence of possession. The government also presented testimony from Lila Howard that she and defendant fired the rifle on September 5, 2001. Although defendant argues that Lila Howard was not credible, it is not for us to assess credibility. Viewing the evidence in the light most favorable to the government, it was sufficient to establish possession.

### C. Sentencing and Appellate Issues

15

# 1. Armed Career Criminal

Defendant argues that the district court erred in sentencing him as an armed career criminal because his three Kentucky state convictions for escape were not of a violent nature, were too remote in time from the instant offense, and were not separate in time from each other. We review this issue *de novo*. *United States v. Maness*, 23 F.3d 1006, 1008 (6th Cir. 1994).

The Armed Career Criminal Act (ACCA) provides, in pertinent part:

> In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g).

18 U.S.C. § 924(e)(1). The term "violent felony" is statutorily defined as any crime that "has as an element the use, attempted use, or threatened use of physical force against the person of another" or "is burglary, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B). To determine whether an offense is a violent felony, a district court should use a "categorical approach" and look to the statutory definition. *United States v. Hargrove*, 416 F.3d 486, 494 (6th Cir. 2005).

As an initial matter, defendant argues that the government did not provide proper notice of its intent to seek the ACCA enhancement. We disagree. First, the ACCA does not require notice. *United States v. Mauldin*, 109 F.3d 1159, 1163 (6th Cir. 1997). Second, defendant received notice. The indictment's penalty page provided that defendant was facing the enhanced

penalty and the government filed a notice before trial listing defendant's convictions and explaining that he was subject to the enhancement.

Here, the district court found that defendant had five qualifying convictions: two convictions for first-degree escape in 1981, a robbery conviction in 1981, a second-degree escape conviction in 1987, and an attempted murder conviction in 1987. Defendant argues only that the prior escape convictions are not violent felonies. In Kentucky, "[a] person is guilty of escape in the first degree when he escapes from custody or a detention facility by the use or force or threat of force against another person." Ky. Rev. Stat. Ann. § 520.020. Second-degree escape occurs when a person "escapes from a detention facility or, being charged with or convicted of a felony, he escapes from custody." Ky. Rev. Stat. Ann. § 520.030. Under the categorical approach, defendant's first-degree escape convictions constitute violent felonies because the offense contains the element of use or threatened use of force. Additionally, all of defendant's escape convictions constitute violent felonies because escape carries a serious risk of potential physical injury if law enforcement or others attempted to interfere with an escape or retake an escapee. *See United States v. Houston*, 187 F.3d 593, 594-95 (6th Cir. 1999); *United States v. Harris*, 165 F.3d 1062, 1068 (6th Cir. 1999).

The argument that the escape convictions were "stale" and "unrelated" and therefore cannot be used to apply the enhancement lacks merit. The ACCA does not exclude convictions based on remoteness in time. *See United States v. Wright*, 48 F.3d 254, 255-56 (7th Cir. 1995); *see also* U.S.S.G. § 4B1.4, comment n.1 (stating that guideline time periods for counting prior sentences are not applicable to the ACCA).

17

As to relatedness, the ACCA requires only three previous convictions that were "committed on occasions different from one another." 18 U.S.C. § 924(e)(1). Convictions that are part of a series of criminal episodes are counted separately under the ACCA if each episode is "a punctuated occurrence with a limited duration." *United States v. Thomas*, 211 F.3d 316, 319 (6th Cir. 2000) (quoting *United States v. Hughes*, 924 F.2d 1354, 1361 (6th Cir. 1991)). Here, the first escape was on June 21, 1981 and ended upon a capture on June 26, 1981. The next escape was on July 12, 1981, and ended upon an arrest on August 3, 1981. The last escape was on November 1987, and ended upon a capture on December 9, 1987. The escapes were distinct in time and each was a separate occurrence. The fact that defendant was convicted of the two 1981 escapes in the same proceedings is irrelevant.

Overall, the district court did not err in sentencing defendant as an armed career criminal.

### 2. *Booker*

Defendant argues that his sentence as an armed career offender was improper in light of *United States v. Booker*, 125 S. Ct. 738, 755-56 (2005). He argues that the district court erred in sentencing him under a mandatory guideline scheme. Because this claim was not raised below, we review for plain error. *United States v. Oliver*, 397 F.3d 369, 377-78 (6th Cir. 2005). Under the plain-error test, we may vacate the sentence if there was an "(1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Johnson v. United States*, 520 U.S. 461, 466-67 (1997).

18

In *Booker*, the United States Supreme Court held that the Sixth Amendment requires that the U.S. Sentencing Guidelines be treated as advisory, not mandatory. Under *Booker*, we subject sentences to reasonableness review, *United States v. Williams*, 432 F.3d 621, 622 (6th Cir. 2005), which has substantive and procedural components, *United States v. Jones*, 445 F.3d 865, 869 (6th Cir. 2006) (citation omitted). The district court must (1) acknowledge the applicable Guideline range; (2) discuss the reasonableness of a variation from that range; (3) consider the advisory provisions of the Guidelines; and (4) consider the other factors set forth in 18 U.S.C. § 3553(a). *Williams*, 432 F.3d at 622-23; *see United States v. Coffee*, 434 F.3d 887, 898 (6th Cir.) (" 'District courts ⋯ must ⋯ calculate the Guideline range as they would have done prior to *Booker*, but then sentence defendants by taking into account all of the relevant factors of 18 U.S.C. § 3553, as well as the Guidelines range.'") (quoting *United States v. Stone*, 432 F.3d 651, 654-55 (6th Cir.2005)), *cert. denied*,-U.S.-, 126 S.Ct. 2313 (2006).

Here, although defendant contends otherwise, no Sixth Amendment violation occurred. Defendant's guidelines range of 253-293 months was based solely on the fact of his prior convictions. Whether defendant has prior convictions and whether the convictions qualified as predicate offenses under the ACCA were not questions that needed to be submitted to the jury under *Booker*. *See United States v. Barnett*, 398 F.3d 516, 524-25 (6th Cir. 2005).

However, this does not mean that no plain error occurred. We have held that a defendant's sentence violates *Booker* if the district court treated the guidelines as mandatory even though, as here, there is no Sixth Amendment violation. In *Barnett*, *supra*, we held that in such a circumstance prejudice is presumed but the government may rebut the presumption when "the trial record contain clear and specific evidence that the district court would not have, in any

19

event, sentenced the defendant to a lower sentence under an advisory Guidelines regime." *Barnett*, 398 F.3d at 529.

Although the government contends that the record does contain such evidence, we disagree. The district court gave some indication why it was sentencing defendant to the top of the guidelines range, including that he did not "have sympathy for defendant," that defendant was "a life-long criminal," and "a violent criminal," but the district court gave no indication what it would do if not constrained by the guidelines. In other words, we do not find "clear and specific evidence" as to the district court's sentence under an advisory Guidelines regime. The fact that the district court sentenced defendant at the top of the guidelines does not rebut the presumption that the plain error arguably caused defendant to receive a more severe sentence than he might have received otherwise. *See United States v. Simons*, 150 Fed. Appx, 428, 439 (6th Cir. 2005) (vacated under *Booker* despite sentence at top of the range); *United States v. Meeker*, 411 F.3d 736, 746 (6th Cir. 2005) (vacated under *Booker* despite upward departure from the guidelines). As such, the case muse be remanded for resentencing.

### 3. Transcripts

Defendant argues that his due process rights were violated because he had to wait thirteen months before receiving his trial and sentencing transcripts. We review questions of law *de novo* and questions of fact under the clearly erroneous standard. *See United States v. Smith*, 94 F.3d 204, 208 (6th Cir. 1996). In determining whether an appellate delay violates a defendant's due process right to a speedy trial, we apply the test set forth in *Barker v. Wingo*, 407 U.S. 514 (1972) which requires consideration of (1) the length of the delay, (2) the reason for the delay, (3) the

20

party's assertion of his rights, and (4) prejudice to the party suffering the delay. *Smith,* 94 F.3d at 208-13.

When balanced, the factors to not weigh in defendant's favor. First, the length of the delay is significantly less than two years, a time period some courts have assumed or held to violate due process in the case of an appellate delay. *Id*. The thirteen month delay is similar in length to delays that have not been found to violate due process. *See United States v. Pratt*, 645 F.2d 89, 91 (1st Cir. 1981) (holding that nine month delay in receiving transcripts did not rise to the level of a due process violation).

The second and third factors do, however, weigh in defendant's favor. The reason for the delay in this case was a delay in the preparation of the trial transcripts by the court reporter, with whom it was apparently difficult to communicate. The government concedes that while it could not have done anything to expedite production of the transcripts, responsibility rests with it rather than defendant. Defendant also asserted his right to a speedy appeal by requesting the transcripts soon after filing an appeal, by attempting to follow up on the request, and by moving this Court to compel production.

Significantly, the final factor, prejudice, does not weigh in defendant's favor. While defendant may have suffered "anxiety" over the delay, he has not alleged that the delay impaired his ability to present any issues on appeal. Defendant has presented numerous issues on appeal, all of which have been fully reviewed.

### III. CONCLUSION

For the reasons stated above, defendant's conviction is AFFIRMED and the case is REMANDED for resentencing.