UNITED STATES, Appellee,

v.

Hojatollah TAJEDDINI, Defendant, Appellant.

No. 92–2294.

United States Court of Appeals, First Circuit.

Heard April 5, 1993.

Decided June 3, 1993.

Kenneth J. King, with whom Fenn & King, Jamaica Plain, MA, were on brief, for defendant, appellant.

Robert W. Iuliano, Asst. U.S. Atty., with whom A. John Papparlardo, U.S. Atty., Boston, MA, was on brief, for appellee.

Before BREYER, Chief Judge, BOWNES, Senior Circuit Judge, and BOUDIN, Circuit Judge.

BOWNES, Senior Circuit Judge.

Defendant and his wife, Lori Ann McBride, were indicted on charges of conspiracy to import more than 100 grams of a mixture or substance containing a detectable amount of heroin (Count One), and importation of more than 100 grams of a mixture or substance containing a detectable amount of heroin (Count Two). Defendant's wife pled guilty prior to trial. Defendant went to trial and a jury convicted him on both counts.

## I.

### Prior Proceedings

This appeal comes to us via a 28 U.S.C. § 2255 petition. After trial, defendant's counsel failed to file a notice of appeal. Defendant, acting *pro se,* filed a series of motions in the district court collaterally attacking the verdict: a motion for a new trial based on ineffective assistance of counsel; a motion for a new trial based on newly-discovered evidence; a § 2255 petition to vacate, set aside or correct sentence; and a motion for return of seized property. The district court denied all of defendant's post-trial motions, and appeals from the denial of each motion were properly filed. We consolidated all the appeals and found that no relief was warranted on any of the motions except for the claim of ineffective assistance of counsel for failure to file a notice of appeal. We remanded that issue for determination by the district court. *United States v. Tajeddini,* 945 F.2d 458, 470 (1st Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 3009, 120 L.Ed.2d 883 (1992). After a hearing, the district court found that because defendant had dismissed his counsel prior to the expiration of the appeal period there could be no claim for ineffective assistance of counsel. The court went on to hold, however, that defendant while proceeding *pro se* had inadvertently failed to file a timely appeal and reinstated defendant's right to appeal. It is this appeal that we now consider.

There are three issues before us on appeal: (1) whether the prosecutor's closing argument was proper; (2) whether the district court erred in denying defendant's motion for a continuance prior to the start of trial; and (3) whether the district court erred in admitting into evidence a statement by defendant.

## II.

### The Facts

We begin by recounting the salient facts as disclosed at trial and in a pre-trial suppression hearing. Defendant, his wife, and their two children, arrived in Boston on October 20, 1988, after a flight from Frankfurt, Ger-

many. Because he was a foreign national, defendant was first processed by Immigration. His wife and children, American citizens, proceeded directly to Customs inspection. After going through Immigration, defendant went to Customs where he was interviewed by Inspector Cheryl B. Gaffney.

Inspector Gaffney asked defendant the standard Customs questions: where he had been on the trip, where he lived, how long he was gone, and the purpose of his visit. In response, defendant stated that he had not travelled to Iran at any time during his trip and that he had not been to Iran in six or seven years. He also stated that he was travelling alone and gave Gaffney his Customs Declaration which indicated that he was travelling alone. After the interview, defendant was taken by Gaffney and Inspectors McGrath and Bird to another room for further questioning and a possible search.

Defendant's wife, Lori Ann McBride, and their two children, went to a different Customs line than defendant. She was interviewed by Inspector Pacewicz to whom she gave her Customs Declaration and her passport and those of her children. Following routine procedures for international travelers, Pacewicz made a Treasury Enforcement Communications System check on McBride to determine if she was a fugitive or was being sought by law enforcement officials. The check showed that there was an outstanding warrant for McBride's arrest in California on a parental kidnapping charge.[1] Defendant knew of the outstanding warrant against his wife.

After Inspector Pacewicz learned of the warrant, he asked McBride and the children to go to a nearby examination table. At about the same time, defendant passed the examination table under escort of Inspectors Gaffney, Bird and McGrath. According to Pacewicz, McBride became "very nervous"

on seeing defendant. This prompted Pacewicz to take her to a search room other than the one to which defendant was being escorted. Almost immediately on entering the room, McBride removed five packages from her coat and threw them on the table, saying, "I don't know what this is. My husband made me carry them, but I know it was something bad." After the packages had been thrown on the table, Inspector Pacewicz found that the contents tested positive for heroin.

Sometime later, Special Agent Joseph Desmond of the Drug Enforcement Agency ("DEA") came to the Customs area. He talked to Inspector Pacewicz and then talked to McBride for about fifteen minutes. Desmond then went to interview defendant. Before questioning defendant, Desmond advised him of his *Miranda* rights. Defendant said he understood his rights, but did not understand why he or his wife were being held. Desmond then ended his discussion with defendant and began processing McBride and making arrangements for their two children.

While so occupied, Desmond was informed that defendant wanted to see him. Desmond and defendant then had an extended conversation. Defendant told Desmond that he obtained the "opium" in Germany from an Iranian named Mohammed Ali Karabolout. He said that he was to be paid $3,000 if he delivered the opium to one Parviz Parvin in San Francisco. Defendant told Desmond that Parvin was a "large heroin dealer."[2]

Desmond talked to defendant again after his arrest. Defendant repeated what he had told him before about where and from whom he had obtained the "opium" and how much he was to be paid for delivering it. Desmond and defendant then discussed carrying out a controlled delivery whereby Parvin would be arrested after defendant made the delivery. After considering the plan in detail and after

---

1. The oldest child of defendant and McBride had been placed in the custody of the California Department of Social Services by the San Diego County, California, Juvenile Court. The arrest warrant was issued after McBride took the child in violation of the custody order.

2. On direct examination at trial, the defendant testified that he had been temporarily in Iran.

When he and his family left Iran, a friend, George Shalmarez, who had lived in the United States, drove them from Iran to Turkey. George asked defendant to deliver packages of "cancer medicine" called "shireb" to a sick friend, Parviz Parvin, in San Francisco. George also told him that Parvin ran a limousine service in San Francisco and might give him a job as a driver.

consulting with an attorney, defendant told Desmond that he did not want to participate in the controlled delivery to Parvin.

The district court held a pre-trial suppression hearing on both McBride's and defendant's motions to suppress their oral and written statements and certain physical evidence. The motions were denied as to defendant, but were partially granted as to McBride. After McBride pled guilty, the prosecutor moved to admit certain evidence including McBride's statement made when she threw the packages of contraband onto the table in the Customs examination room. The court suppressed McBride's statement and it was not mentioned at trial although the Customs inspector described her actions.

### III.

#### Analysis

Defendant raises three issues on appeal. He first challenges parts of the prosecutor's closing argument on the following grounds: (1) an impermissible reference to excluded evidence; (2) argument of matters based on the prosecutor's personal belief and opinion and knowledge of matters not in evidence; (3) an attempt to inflame passions or prejudice of the jury; and (4) a misrepresentation of defendant's finances to suggest a motive for the crime. In addition, defendant appeals the district court's denial of his motion for a continuance, and the court's decision to admit evidence at trial which was not disclosed to defendant until three days before trial.

#### A. Prosecutor's Closing Argument

Because defendant failed to object at trial to the prosecutor's statements made in closing argument, we review defendant's claims on appeal under the plain error standard. United States v. Young, 470 U.S. 1, 6, 14–15, 105 S.Ct. 1038, 1041, 1045–46, 84 L.Ed.2d 1 (1985); United States v. Rodriguez–Cardona, 924 F.2d 1148, 1154 (1st Cir.), cert. denied, —— U.S. ——, 112 S.Ct. 54, 116 L.Ed.2d 31 (1991); Fed.R.Crim.P. 52(b).[3]

3. Fed.R.Crim.P. 52(b) provides as follows:

The plain error exception is to be used " 'sparingly, solely in circumstances in which a miscarriage of justice would otherwise result.' " Young, 470 U.S. at 15, 105 S.Ct. at 1046 (quoting United States v. Frady, 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 1592 n. 14, 71 L.Ed.2d 816). We consider the prosecutor's statements in the context of the entire trial. United States v. Morales–Cartagena, 987 F.2d 849, 854 (1st Cir.1993); United States v. Smith, 982 F.2d 681, 682 (1st Cir. 1993); Rodriguez–Cardona, 924 F.2d at 1154. Three significant factors guide our evaluation of whether the trial was so tainted by prosecutorial misconduct in argument as to constitute plain error: "(1) whether the prosecutor's conduct was isolated and/or deliberate; (2) whether the trial court gave a strong and explicit cautionary instruction; and (3) whether it is likely that any prejudice surviving the judge's instruction could have affected the outcome of the case." United States v. Hodge–Balwing, 952 F.2d 607, 610 (1st Cir.1991); see also Morales–Cartagena, 987 F.2d at 954. With these tenets in mind, we address each of defendant's allegations of misstatement by the prosecutor to determine whether there was error, and then we assess the aggregate effect on the trial as a whole.

#### 1. Alleged Reliance on Evidence Excluded From Trial

Defendant claims that the prosecutor's closing argument relied on evidence that had been excluded from the trial as hearsay. Before trial, the court suppressed McBride's statement, made during the Customs examination as she emptied packages from her coat onto a table, "I don't know what this is. My husband made me carry them, but I know it was something bad." The court found that the statement was inadmissible hearsay because McBride was available to testify, and her knowledge of the contents of the packages was being offered to establish defendant's knowledge through a statement which was not in furtherance of their alleged conspiracy.

Plain Error. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.

At trial, Customs Inspector Pacewicz, who was in the search room with McBride, recounted McBride's actions of removing the packages from her coat, and did not mention her previously excluded statement. Defendant did not object to this testimony and does not now claim that allowing Pacewicz's testimony was error.[4] Defendant's complaint is with the way the prosecutor used the evidence in closing argument. During closing argument, the prosecutor made the following references to Inspector Pacewicz's testimony:

> At that time Inspector Pacewicz took Lori Ann McBride to another secondary search room. As soon as Lori Ann McBride entered the secondary search room she dumped packages out of her coat.

> I leave it to you, for example, to decide what, if anything, that indicates about what Lori Ann McBride might have thought was in those packages.

Later in his argument the prosecutor stated:

> You heard how Lori Ann McBride then pulled the stuff out of her pockets and dumped it on the table. Obviously, very nervous, very agitated.

> The Customs Declaration of the defendant says he is travelling alone. Was there some understanding between Lori Ann McBride and the defendant? The evidence, I suggest, shows clearly that there was.

We note first that defendant's allegation that the prosecutor used suppressed evidence in closing argument is wrong. The prosecution fully adhered to the court's order excluding McBride's statement. The prosecutor's closing argument recounted McBride's actions, not her suppressed statement. Inspector Pacewicz also testified to her actions and not her statement.

■■■ Defendant alternatively argues that by referring to McBride's actions and asking the jury to draw inferences based on her actions, the prosecutor was attempting to convey the message, expressed by McBride's excluded statement, that defendant knew that the packages contained contraband. The prosecutor's reference to McBride's actions, defendant argues, should have been excluded for the same reason that the court excluded her statement.

The prosecutor's argument was not evidence in the trial, as the district court properly instructed the jury. Argument necessarily presents a partisan view of the evidence admitted at trial. Although the prosecution may not interject personal credibility or opinion into argument, the prosecutor is entitled, in closing, to ask the jury to draw warrantable inferences from the evidence admitted during trial. *Young*, 470 U.S. at 7, 105 S.Ct. at 1042; *United States v. Mount*, 896 F.2d 612, 625 (1st Cir.1990).

The prosecutor asked the jury to consider "what, if anything" McBride's actions indicated about what she thought was in the packages which she threw on the table. The prosecutor later suggested that McBride's actions and nervousness and defendant's Customs Declaration that he was travelling alone indicated an understanding between McBride and defendant. The evidence at trial established that McBride threw the packages on the table in the Customs examination room, that she was nervous during the Customs examination, and that defendant claimed to be travelling alone. Therefore, the prosecutor asked the jury to draw warrantable inferences based upon the evidence at trial. We find nothing improper in the prosecutor's reference to McBride's actions in closing argument, and therefore we find no error.

### 2. *Argument of Matters Not in Evidence and Personal Opinion*

Next, defendant asserts impropriety in the prosecutor's reference to defendant's decision not to go ahead with the controlled delivery

---

4. Defendant may be arguing, by implication, that Inspector Pacewicz's testimony about McBride's actions was inadmissible hearsay evidence of expressive conduct. Because defendant has not directly raised this as an issue on appeal, we deem it waived. *United States v. Zannino*, 895

F.2d 1, 17 (1st Cir.) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones."), *cert. denied*, 494 U.S. 1082, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990).

in which he had originally agreed to participate.[5] At trial, defendant testified that his decision not to cooperate was motivated by his fear for the safety of his wife and family. On cross-examination, defendant admitted stating to DEA Agent Desmond in a letter that Parvin was "the Al Capone of San Francisco" and that he knew Parvin "to be the key of the whole drug supply for California." The defendant continued to maintain his innocence, however, claiming that he thought the packages contained cancer medicine for Parvin, not heroin. In his closing, the prosecutor made the following remarks:

> Why, ladies and gentlemen, would he not do it, [the controlled delivery] if he was confident that at the other end of the road there was someone waiting for cancer medicine and not heroin? If in fact, someone was waiting there for cancer medicine, he could have proved his innocence and surely he knows that in that instance he would not have been prosecuted.

In his rebuttal, the prosecutor responded to the defendant's closing thus:

> Mr. Boudreau [the defense lawyer] just said that I said in my closing argument that the defendant would have been prosecuted anyway, even if he effected the controlled delivery. That was not my point. My point was that if the defendant is telling the truth, that the person at the other end of the line, Parvis Parvin, was waiting for medicine, he could have proved his innocence by effecting the delivery.
>
> The defendant said he initially agreed to do it because he wanted to show that the person at the other end of the line was waiting for medicine and not heroin. Clearly, the defendant could not have thought that if he effected the delivery and the person was, in fact, waiting for medicine and was sick with cancer, that he would have been prosecuted.
>
> I think that, clearly, he would not, or clearly he would not have been prosecuted

if he had proved his innocence in that manner.

■ Although he did not object at trial, defendant now opposes the prosecutor's statements on two bases: that the statements refer to matters not in evidence and that the statements assert the personal beliefs of the prosecutor. It is improper for a prosecutor, in argument, to refer to or to seem to rely on matters not in evidence. *Smith*, 982 F.2d at 683. It is also improper for a prosecutor to insert his own credibility or opinions into argument. *Id.; Mount*, 896 F.2d at 625. Defendant contends that the prosecutor's remarks impermissibly suggested that he knew something not introduced at trial which determined whether or not defendant would have been prosecuted and also interjected his personal opinion about defendant's actions.

■ The prosecutor may have overstepped the boundaries of permissible argument by offering his opinion, "I think that, clearly he would not, or clearly he would not have been prosecuted if he had proved his innocence in that manner." [6] If so, the transgression does not constitute plain error in the context of the trial as a whole. The prosecutor did not routinely insert his personal opinion into the argument nor do we find that his remark was deliberate. Although the court did not give a cautionary instruction, we find that little, if any, prejudice resulted. The prosecution's argument about the implications of defendant's choice not to participate in the controlled delivery was merely cumulative of other evidence including defendant's confessions, admitted at trial and argued in closing, which showed defendant's knowledge that the packages contained heroin and not cancer medicine. Therefore, the remark was not so severely prejudicial as to undermine defendant's substantial rights or the fairness of the trial as a whole.

Defendant also claims that the prosecutor's argument as quoted above impermissibly

**5.** When asked by DEA Agent Desmond to cooperate in a controlled delivery of the packages containing heroin to Parvin, the intended recipient of the "medicine" in San Francisco, defendant initially agreed to participate and then changed his mind.

**6.** The prosecutor, apparently, was attempting to make the point that defendant refused to cooperate in the controlled delivery to Parvin because he knew that the circumstances of the delivery would not clear him of the crimes charged and, therefore, he would be prosecuted anyway.

shifted the burden to defendant to prove his innocence. We do not agree. Further, the court gave a sufficient charge on the presumption of innocence to dispel any improper suggestion which the jury might have taken from the argument.[7]

### 3. *Inflammatory Remarks*

■ Defense counsel argued in closing that defendant's failure to hide the packages of contraband in suitcases or in hidden compartments indicated his innocence. The prosecutor answered in rebuttal as follows:

> Finally, ladies and gentlemen, Mr. Boudreau suggests that the defendant, if he knew he was smuggling in heroin would have found a secret compartment in the luggage to carry the heroin. I suggest that the defendant did find a secret compartment. He found a secret compartment in his American wife who he thought would not be searched because she was an American wife with two small children, and that is the secret compartment that he found and attempted unsuccessfully to use.

Defendant now argues that the prosecutor's references to defendant's *American* wife were intended to inflame the jury's passions and prejudices against defendant who is Iranian. There is no doubt that argument which is intended to appeal to emotions rather than to reason is improper. *United States v. Moreno*, 991 F.2d 943 (1st Cir.1993); *United States v. Johnson*, 952 F.2d 565, 574 (1st Cir.1991), *cert. denied*, — U.S. —, 113 S.Ct. 58, 121 L.Ed.2d 27 (1992); *United States v. Giry*, 818 F.2d 120, 132–33 (1st Cir.), *cert. denied*, 484 U.S. 855, 108 S.Ct. 162, 98 L.Ed.2d 116 (1987). That is not the case here, however. Although the prosecutor's remarks, taken in isolation, might suggest an appeal to the passions of the jury, when his remarks are taken in context, any such tactic vanishes. The prosecutor was countering the defense by arguing that defendant may have assumed that his American wife would have an easier passage through Customs than he would, and used that advantage for smuggling the packages of heroin. Further, the court gave the following cautionary instruction:

> The fact that the defendant in this case is not a citizen of the United States and is by birth an Iranian should not prejudice you for or against him, but he should be treated like any other defendant, and your verdicts should be based on the evidence that has been introduced before you in this case.

Reading the prosecutor's remarks in context and in light of the defense's closing argument, we find no impropriety in the statement. If any prejudice was communicated, the court cautioned the jury not to allow bias about nationality to influence its decision.

### 4. *Financial Motive for the Crime*

■ In response to defendant's claim that he had no motive to commit the crime of importing heroin, the prosecution argued that defendant, and his family, had only $700 when they entered the United States. The amount was based upon the combined Customs Declarations of defendant and McBride. Defendant admitted that he had been promised $3,000 if he delivered the contraband to Parvin. The prosecution argued that the promised payment provided a financial motive for defendant to import the heroin. Defendant now asserts that he had $1,456 in traveller's checks with him when he entered the United States which the government seized when he was arrested. The government notes that after reviewing their files they agree with defendant. Defendant argues that the prosecution's imputed financial motive was improper given the traveller's checks. Defendant failed to raise the argument at trial and failed to mention the traveller's checks during his testimony at trial. There is no suggestion that the prosecution deliberately misrepresented defendant's fi-

---

7. On the government's burden of proof, the court instructed as follows:

> The law presumes a defendant to be innocent of a crime. Thus, defendant, although accused, begins the trial with a clean slate, with no evidence against him, and the law permits nothing but legal evidence presented before the jury to be considered in support of any charge against the defendant. So the presumption of innocence alone is sufficient to acquit a defendant unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after a careful and impartial consideration of all the evidence in the case.

nancial condition. Further, $3,000 remains a financial incentive, although perhaps of somewhat less significance. Therefore, we find the prosecution's argument of financial motive was proper under these circumstances.

### 5. *No Plain Error*

We have found that the prosecutor's closing argument was, for the most part, proper. In the context of the entire trial, we find that the aggregate impact of any impropriety was minimal and did not cause a miscarriage of justice. Therefore, the trial was not marred by plain error.

### B. *Denial of Motion for Continuance*

The defendant appeals the district court's denial of his motion for continuance to allow time in which to obtain additional corroborative evidence. We previously considered this issue in defendant's appeal from denial of his 28 U.S.C. § 2255 petition. At that time, defendant claimed ineffective assistance of counsel due, in part, to his counsel's failure to timely file the motion for continuance. After trial and before the § 2255 appeal, defendant obtained from Iran a police report of a statement by Ali Karabolout, one of the people involved with defendant in Iran, which defendant had hoped to present at trial. Defendant submitted the police report to this court. We reviewed the substance of Karabolout's statement and concluded that it was hearsay. We found that Karabolout's statement was not against significant penal interest, as it was more exculpatory than inculpatory, and that it lacked sufficient other indicia of reliability to obligate the district court to find that it fell within any exception to the hearsay rule. We concluded that the documents from Iran were not admissible in evidence and, therefore, late filing of the motion for continuance did not prejudice defendant. *Tajeddini*, 945 F.2d at 463–65.

■ Defendant now requests that we reconsider our decision on the ground that we previously misunderstood the effect of Iranian law on Karabolout which would result from his statement to Iranian police. We decline to do so. This appeal is, of course, not an appropriate method to move for reconsideration of our previous decision. *See* Fed.R.App.P. 40.[8] Further, when a legal issue has been presented to and decided by this court, our decision becomes the law of the case in all subsequent proceedings on the same matter. *United States v. Rivera–Martinez*, 931 F.2d 148, 150–52 (1st Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 184, 116 L.Ed.2d 145 (1991); *United States v. Rosen*, 929 F.2d 839, 842 (1st Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 77, 116 L.Ed.2d 51 (1991); *United States v. Latorre*, 922 F.2d 1, 9 (1st Cir.1990), *cert. denied*, —— U.S. ——, 112 S.Ct. 217, 116 L.Ed.2d 175 (1991).

■ A court's determination of foreign law is treated as a ruling on a question of law. Fed.R.Crim.Pro. 26.1. Although we retain the power to reopen a question of law previously decided, it is our practice to do so only in extraordinary circumstances such as when " ' [ (1) ] the evidence presented in a subsequent trial was substantially different, [ (2) ] controlling authority has since made a contrary decision of the law applicable to such issues, or [ (3) ] the decision was clearly erroneous and would work a manifest injustice.' " *Rivera–Martinez*, 931 F.2d at 151 (quoting *White v. Murtha*, 377 F.2d 428, 432 (5th Cir.1967)); *see also Morgan v. Burke*, 926 F.2d 86, 91 (1st Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1664, 118 L.Ed.2d 386 (1992).

■ Extraordinary circumstances do not exist in this case. Defendant makes no argument that substantially different evidence on this issue was presented at the district court hearing prior to this appeal, or that controlling authority has changed since our prior opinion. We are unconvinced by defendant's argument that Iranian law, as offered by defendant,[9] requires us to change our deci-

---

8. After our decision and the mandate to the district court was issued, the defendant filed several petitions for extensions of time to file a motion for rehearing and a request for recall of mandate. His petitions and requests were de-

nied because he failed to demonstrate any errors in our opinion.

9. The defendant has submitted a letter from the director of the Interests Section of the Islamic Republic of Iran at the Embassy of Pakistan

sion on this issue. Therefore, our prior holding that Karabolout's statement was inadmissible hearsay was neither ·clearly erroneous nor did it constitute a manifest injustice, and there is no reason to disturb it.

### C. *Delayed Discovery Disclosure*

Defendant assigns as error the district court's decision to allow the government to introduce statements made by defendant to Customs inspectors although the statements were not disclosed to the defense until three days before trial. ˙Defendant claims that the late disclosure of the statements violated Fed.R.Crim.P. 16 and was prejudicial to his defense. We disagree.

■ Rule 16(a)(1), in the version in effect at the time of defendant's trial, required the government to disclose certain evidence prior to trial:

"Upon request of a defendant the government shall permit the defendant to inspect and copy or photograph: any relevant written or recorded statements made by the defendant, or copies thereof, within the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney of the government; the substance of any oral statement which the government intends to offer in evidence at the trial made by the defendant whether before or after arrest in response to interrogation by any person then known by the defendant to be a government agent...."

Fed.R.Crim.P. 16(a)(1)(A); *see also* U.S. Dist.Ct.Mass.R. 116.1 (Automatic Discovery in Criminal Cases). Rule 16(c) imposes a continuing obligation on all parties to disclose other evidence or material previously requested˙and subject to the rule. If a ·party fails to provide discovery as required by Rule 16, the district court may impose remedial measures or sanctions including prohibiting

the violating party from introducing the evidence at trial. Fed.R.Crim.P.·· 16(d)(2). In exercising its discretion· to control discovery rule violations, the district court must inquire into the surrounding circumstances to determine whether the violating party acted in bad faith. *Id.; United States v. Samalot Perez,* 767 F.2d 1, 4 (1st Cir.1985). Our review of a district court's rulings on discovery matters is to determine whether the court abused its discretion. *United States v. Alvarez,* 987 F.2d 77, 85 (1st Cir.1993). To obtain reversal, the defendant must prove that the district court abused its discretion which resulted in prejudice to the defense. *Alvarez,* 987 F.2d at 85; *United States v. Nickens,* 955 F.2d 112, 126 (1st Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 108, 121 L.Ed.2d 66 (1992).

■ Defendant objects to the government's use of two oral statements he made in response to questioning by a Customs inspector. Answering routine questions of where he was arriving from and with whom he was travelling, defendant said that he had not been in Iran for six or seven years and that he was travelling alone. Both of those statements were false.

During a hearing on preliminary matters at the beginning of the trial, the district court questioned the government as to why the statements were not disclosed to defense counsel in a timely manner. The government responded that the statements were unknown to them until the day before they were disclosed to defense counsel, three days before trial. The next day, before testimony began, defense counsel asked the court to suppress the statements on the grounds that the late disclosure, three days before trial, had prejudiced his opportunity for a suppression hearing.[10] The district court conditionally ruled that the two statements were admissible. The court cautioned that if testimony during trial showed that there was a

which is signed for the director by someone else. The letter expresses an opinion, based on a letter from defendant's attorney, that the proceedings in Iran against Karabolout̃ were only temporarily suspended, and that Karabolout may be exposed to criminal or civil penalties based on his statement to the Iranian police. Although we are not bound by the rules of evidence in considering

proof of foreign law, the defendant's submission is inadequate to inform this court of Iranian law allegedly relevant to this matter.

**10.** A suppression hearing was held before trial on other matters.

basis for suppression, he would halt the trial and hold a suppression hearing. When the government alerted the court that it was about to elicit testimony from Inspector Gaffney about defendant's statements, the court directed the government to proceed with the questions. Defense counsel objected and the court overruled the objection without elaboration.

On appeal, defendant argues that the late disclosure of the statements by the government deprived him of an opportunity to attempt to suppress the statements. He contends that the statements should have been suppressed because he was not given *Miranda* warnings before the questioning which produced the statements. Defendant's theory is that if the inspector who processed McBride through Customs became aware of the warrant for her arrest and her relationship to defendant before another inspector questioned defendant, then there was a basis for detaining defendant and he was entitled to *Miranda* warnings before being questioned.

The right to *Miranda* warnings attaches in a custodial or coercive situation. *Oregon v. Elstad,* 470 U.S. 298, 309, 105 S.Ct. 1285, 1293, 84 L.Ed.2d 222 (1985); *United States v. Masse,* 816 F.2d 805, 809 (1st Cir.1987). Neither suspicion nor probable cause to arrest, without action to restrain the suspect, invoke the requirement for *Miranda* warnings. *United States v. McDowell,* 918 F.2d 1004, 1008 (1st Cir.1990); *United States v. Mejia,* 720 F.2d 1378, 1381 (5th Cir.1983); *United States v. Silva,* 715 F.2d 43, 46–48 (2d Cir.1983). Routine Customs questioning does not require *Miranda* warnings. *United States v. Pratt,* 645 F.2d 89, 90–91 (1st Cir.), *cert. denied,* 454 U.S. 881, 102 S.Ct. 369, 70 L.Ed.2d 195 (1981). Even if the circumstances hypothesized by defendant had occurred, defendant was not entitled to *Miranda* warnings before answering routine Customs questions. Therefore, the false statements made by defendant in response to the Customs inspector's questions were properly admitted into evidence.

There is no question that the statements were disclosed to defendant long past the discovery deadline. Defendant does not argue that the government acted in bad faith, however, and the court's inquiry concerning why the government's disclosure was delayed does not reveal evidence of bad faith by the government. Defendant has not shown that the delay prejudiced his defense by impairing his opportunity to suppress the statements. The court heard testimony at trial from the Customs inspectors involved with defendant and McBride, and found that a suppression hearing was unnecessary before defendant's statements were admitted. Therefore, we find no abuse of the court's discretion to control discovery violations and no resulting prejudice to the defendant. Defendant's request that this issue be remanded to the district court for a suppression hearing is denied.

***Affirmed.***