<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                United States Court of Appeals
                    For the First Circuit

No. 98-1787

                         UNITED STATES,

                           Appellee,

                               v.

                      FRANCISCO A. BERAS,

                     Defendant, Appellant.

          
          APPEAL FROM THE UNITED STATES DISTRICT COURT

                FOR THE DISTRICT OF PUERTO RICO

       [Hon. Carmen Consuelo Cerezo, U.S. District Judge]

                             Before

                     Stahl, Circuit Judge,
               Kravitch,* Senior Circuit Judge,
                  and Lipez, Circuit Judge.
                                
                                
                                
                                
    Julio E. Gil De Lamadrid, Jose Neil Pea Senati, and Marisel
Pea Senati on brief for appellant.
    Camille Vlez-Riv, Assistant United States Attorney, Jorge E.
Vega-Pacheco, Assistant United States Attorney, and Guillermo Gil,
United States Attorney, on brief for appellee.

July 7, 1999

                                
____________________
*Of the Eleventh Circuit, sitting by designation.

 STAHL, Circuit Judge.  Defendant-appellant Francisco A.
Beras was convicted by a jury for failing to report that he was
transporting over $10,000 in currency out of the United States in
violation of 18 U.S.C.  2 and 31 U.S.C.  5316(a)(1)(A) & 5322,  
and for making a false statement in violation of 18 U.S.C.  2 &
1001.  The district court sentenced Beras to twelve months'
imprisonment and also ordered him to forfeit the $138,794 that he
was transporting.  On appeal, Beras challenges his convictions, the
court's sentence, and its forfeiture order.  After careful
consideration of Beras's arguments, we affirm his convictions and
the sentence, but reverse the forfeiture order and remand for
further proceedings consistent with this opinion.
                              I.
                          Background
 In reviewing the court's denial of defendant's motion to
suppress, we recite the facts as found by the district court to the
extent they are not clearly erroneous.  See United States v.
McCarthy, 77 F.3d 522, 525 (1st Cir. 1996).  On May 24, 1997, Beras
and co-defendant Carmen Ortiz were stopped at the jetway in the
Luis Munoz Marin International Airport in Carolina, Puerto Rico by
United States Customs Agent Victor Ramos as they were attempting to
board a flight destined for Santo Domingo, Dominican Republic.  
Ramos asked Beras and Ortiz for an interview and the two
acquiesced.  Ramos then identified himself as a customs officer and
explained that passengers transporting more than $10,000 in
currency are required to file a report.  Both Beras and Ortiz
indicated that they understood the requirement.  Ramos asked
whether either of them was carrying more than $10,000.  Each
answered no.  Ramos next asked how much currency each passenger was
transporting.  Ortiz stated that she was transporting $3,000 and
Beras stated that he was transporting $2,500.  Ramos asked Ortiz to
show him the currency she was transporting, and Ortiz produced an
envelope that appeared to contain about $3,000.  Ramos asked Beras
to show him the currency that he was transporting, and Beras opened
his wallet, showing cash totaling about $5,000.   
 During the interview, Ramos noticed a bulky area in the
lower part of each passenger's legs.  Ramos called a female agent
and asked her to pat down Ortiz.  The pat down revealed bundles of
cash hidden inside each of Ortiz's socks.  Ramos conducted a pat
down of Beras and felt a bulge in Beras's lower leg.  Ramos asked
Beras to show him the contents of the bulge.  Beras lifted up both
his pant legs and removed money that he was carrying in his socks.  
Ramos placed Beras and Ortiz under arrest and escorted them to the
Customs inspection area where the two were subsequently searched.  
The search revealed $138,794 in cash.
 On June 11, 1997, a grand jury returned a three-count
indictment against Beras and Ortiz.  Count One charged that Beras
and Ortiz had aided and abetted each other and were about to
transport monetary instruments in excess of $10,000 from Puerto
Rico to the Dominican Republic, without first filing a report.  See
18 U.S.C.  2 and 31 U.S.C.  5316(a)(1)(A) & 5322.  Count Two
sought criminal forfeiture of the $138,794.  See 18 U.S.C.  982.  
Count Three charged Beras and Ortiz with aiding and abetting each
other while making a false statement as to a material fact, see 18
U.S.C.  2 & 1001, when defendants stated that they were carrying
less than $10,000.  Before trial, Ortiz pleaded guilty as to Count
One and the government dismissed the other charges against her.
 Beras moved to suppress the evidence that was obtained as
a result of his exchange with Ramos, alleging that it was obtained
in violation of his Fourth Amendment rights.  Following a hearing,
a magistrate judge issued a Report and Recommendation that the
motion be denied under the border search exception to the Fourth
Amendment.  In the alternative, the magistrate found that the pat
down of Beras's legs was supported by reasonable suspicion.  The
district court adopted the magistrate's Report and Recommendation
and denied the suppression motion.
 A jury trial began on February 10, 1998.  During trial,
Beras objected to the government's introduction into evidence of  
a blank United States Customs form 4790 and two posters, arguing
that they had not been disclosed to him during discovery and
therefore were inadmissible at trial.  The court overruled Beras's
motion with respect to the customs form but granted the motion with
respect to the posters.  After a two-day trial, the jury returned
a guilty verdict as to Counts One and Three.
 Following the trial, the government moved for an order of
forfeiture pursuant to Count Two of the indictment.  The court
granted the motion, ordering that Beras and Ortiz forfeit $138,794
as property used by them during the commission of the crime alleged
in Count One of the indictment.
 On May 26, 1998, the district court, after a hearing,  
sentenced Beras to twelve months and one day of imprisonment, three
years of supervised release, and imposed a special fine of $100.
 On appeal, Beras claims (1) that the district court erred
in denying his motion to suppress; (2) abused its discretion in
admitting evidence that had not been produced during discovery; (3)
made a number of errors in calculating his sentence; and (4) that
the forfeiture order violates the Eighth Amendment.
                             II.
                          Discussion
A.  Motion to Suppress
 In his challenge to the district court's denial of his
motion to suppress, Beras contends that the exchange between him
and Ramos constituted a de facto arrest that was not supported by
probable cause.  We review the court's findings of fact for clear
error and review de novo its conclusions of law and its rulings on
the constitutionality of the government's conduct.  See United
States v. Acosta-Colon, 157 F.3d 9, 13-14 (1st Cir. 1998).  
 There is no question that Ramos's initial questioning of
Beras did not infringe Beras's Fourth Amendment rights.  See
Florida v. Royer, 460 U.S. 491, 497 (1983) ("[L]aw enforcement
officers do not violate the Fourth Amendment by merely approaching
an individual . . . in [a] public place, by asking him if he is
willing to answer some questions, by putting questions to
him . . . or by offering in evidence in a criminal prosecution his
voluntary answers to such questions.") (plurality opinion).  Thus,
the issue is whether Ramos was permitted to pat down Beras's legs.  
The government contends that the pat down was a routine border
search that falls within the border search exception to the Fourth
Amendment.
 It is well established that "the Fourth Amendment's
balance of reasonableness is qualitatively different at the
international border than in the interior."  United States v.
Montoya de Hernandez, 473 U.S. 531, 538 (1985).  Under the border
search exception, "[r]outine searches of the persons and effects of
entrants are not subject to any requirement of reasonable
suspicion, probable cause, or warrant."  Id. (emphasis added).  The
Supreme Court, however, has not yet addressed the issue of whether
the border search exception applies to outgoing as well as incoming
travelers.  Nor has this circuit ruled on the issue.  But see
Acosta-Colon, 157 F.3d at 13 (suggesting, in dicta, that the border
search exception would apply if "the bags or any of the suspects
were required to pass through U.S. Customs, or were involved in any
international border crossing").  Every other circuit to consider
the issue, to our knowledge, has held that the border search
exception applies to outgoing as well as incoming travelers.  See
United States v. Ezeiruaku, 936 F.2d 136, 143 (3d Cir. 1991);
United States v. Berisha, 925 F.2d 791, 795 (5th Cir. 1991); United
States v. Udofot, 711 F.2d 831, 839-40 (8th Cir. 1983); United
States v. Ajlouny, 629 F.2d 830, 834-35 (2d Cir. 1980); United
States v. Stanley, 545 F.2d 661, 667 (9th Cir. 1976); cf. United
States v. Hernandez-Salazar, 813 F.2d 1126, 1138 (11th Cir. 1987)
(without deciding whether the border search exception "applies
equally in all respects to incoming and outgoing searches," holding
that the Fourth Amendment "permits warrantless searches of persons
and property departing the United States on the basis of reasonable
suspicion that a currency reporting violation is occurring").  
These cases have drawn support from dicta in California Bankers
Ass'n v. Shultz, 416 U.S. 21, 63 (1974), where the Supreme Court
stated: "[T]hose entering and leaving the country may be examined
as to their belongings and effects, all without violating the
Fourth Amendment."
 We join our sister circuits and conclude that the border
search exception to the Fourth Amendment applies to outgoing
travelers.  In our view, there is a convincing policy justification
for extending the exception.  The border search exception arises
from the "longstanding concern for the protection of the integrity
of the border[, . . . a] concern [that] is, if anything, heightened
by the veritable national crisis in law enforcement caused by
smuggling of illicit narcotics."  Montoya de Hernandez, 473 U.S. at
538.  As the Third Circuit has recognized, this concern also arises
with respect to outgoing travelers:  
   National interests in the flow of currency
 justify the diminished recognition of privacy
 inherent in crossing into and out of the
 borders of the United States . . . . Although
 there is not the slightest suggestion that the
 appellee here was implicated in drug
 trafficking, in an environment that sees a
 massive importation of drugs across our
 borders, we are cognizant that there must be a
 concomitant outflow of cash to pay for this
 nefarious traffic.

Ezeiruaku, 936 F.2d at 143.   
 Beras was patted down at the functional equivalent of an
international border, see Almeida-Sanchez v. United States, 413
U.S. 266, 272-73 (1973), and the district court supportably found
that the pat down was conducted pursuant to a routine border
search.  Thus, neither probable cause nor reasonable suspicion was
required.  The district court's denial of the motion to suppress is
affirmed.
B.  Evidentiary Issues
 Beras complains that the district court erred in
admitting into evidence a blank United States Customs Form 4790,
which passengers leaving or entering the country must file when
they are transporting more than $10,000 in currency.  Beras
contends that because the form was not disclosed to him during
discovery, it should not have been admitted at trial.  See Fed. R.
Crim. P. 16.  
 Rule 16(a)(1)(C) requires that the government, upon
request of the defendant, permit the defendant to inspect and copy
any document that the government intends to use as evidence in its
case in chief at trial.  Where the government fails to comply with
this rule, the district court "may order such party to permit the
discovery or inspection, grant a continuance, or prohibit the party
from introducing evidence not disclosed, or it may enter such other
order as it deems just under the circumstances."  Fed. R. Crim. P.
16(d)(2).  We review the district court's ruling for abuse of
discretion.  See United States v. Tajeddini, 996 F.2d 1278, 1287
(1st Cir. 1993).  We will uphold the ruling absent a demonstration
of prejudice to the defendant.  See id.  Moreover, a "criminal
defendant must ordinarily seek a continuance if he intends to claim
prejudice."  United States v. Sepulveda, 15 F.3d 1161, 1178 (1st
Cir. 1993).  "[I]n situations where defense counsel does not seek
a continuance upon belated receipt of discoverable information, a
court often can assume that counsel did not need more time to
incorporate the information into the defense's game plan."  Id.
 Even assuming arguendo that the government violated Rule
16, Beras failed to request a continuance.  Beras also has failed
to articulate any prejudice suffered as a result of the
government's failure to produce the form during discovery.  We
therefore detect no reversible error in the district court's
decision to admit the form into evidence.
C.  Sentencing on Counts One and Three
 Beras assigns two errors to the district court's
calculation of his sentence under the Sentencing Guidelines.  We
review the court's factual determinations for clear error and its
interpretation of the Sentencing Guidelines de novo.  See United
States v. Conley, 156 F.3d 78, 84 (1st Cir. 1998).
 First, Beras claims that the district court erred in
applying a seven-point enhancement pursuant to U.S.S.G.
2F1.1(b)(1)(h), which states that such an enhancement is
appropriate for a "loss" that exceeds $120,000.  According to
Beras, because there was no "loss" in his crime, the seven-point
enhancement is inappropriate.  Beras's argument is without merit.  
The district court properly referred to U.S.S.G.  2S1.3, which
provides the base offense level for the "Failure to File Currency
and Monetary Instrument Report."  The base offense level is "6 plus
the number of offense levels from the table in  2F1.1
. . . corresponding to the value of the funds."  The district court
thus properly enhanced Beras's sentence by seven points because the
"value of the funds" exceeded $120,000.
 Second, Beras claims that the district court erred in
failing to award him a two-point reduction in his base offense
level for his acceptance of responsibility.  See U.S.S.G.  3E1.1.  
According to Beras, he deserved a reduction because he only went to
trial to avoid forfeiture and has expressed remorse.  Recognizing
that "[t]he sentencing judge is in a unique position to evaluate a
defendant's acceptance of responsibility," U.S.S.G.  3E1.1,
Application Note 5, we defer to the court's finding that "[Beras]
went to trial in order to contest the factual elements of the
offenses for which he was charged and the statement of remorse
included in the PSI was made by him after his conviction."  We find
no error in the court's decision not to award Beras an acceptance
of responsibility reduction.
D. Eighth Amendment Claim
 Finally, Beras claims that the district court's
forfeiture order violates the Eighth Amendment's prohibition of
excessive fines.  Because Beras did not raise the Eighth Amendment
claim at trial, we review only for plain error.  See Fed. R. Crim.
P. 52(b) ("Plain errors or defects affecting substantial rights may
be noticed although they were not brought to the attention of the
court.").  Under Rule 52(b), we may take notice of a forfeited
claim of error only if there has been (1) an error; (2) that is
"plain," meaning "clear" or "obvious"; and (3) that error
"affect[s] substantial rights".  United States v. Olano, 507 U.S.
725, 732 (1993); see also United States v. Bradstreet, 135 F.3d 46,
50 (1st Cir.), cert. denied, 118 S. Ct. 1805 (1998).  Even if these
three elements are met, however, we may not exercise our discretion
unless the error involves "a miscarriage of justice" or "seriously
affect[s] the fairness, integrity or public reputation of judicial
proceedings."  Olano, 507 U.S. at 736.
 First, there is no doubt that the forfeiture order would
be an error if Beras's trial occurred today.  The Supreme Court has
held that the forfeiture of $357,144 that a defendant willfully
failed to report as he was exiting the country would violate the
Excessive Fines Clause of the Eighth Amendment.  See United States
v. Bajakajian, 118 S. Ct. 2028, 2031 (June 22, 1998).  The Court
stated that full forfeiture would be "grossly disproportional to
the gravity of his offense," given that the defendant was found
guilty only of a reporting offense.  Id. at 2031, 2038.  Because
this case was still pending on direct review when Bajakajian was
decided, there was error under Bajakajian.  See Griffith v.
Kentucky, 479 U.S. 314, 328 (1987) (A "new rule for the conduct of
criminal prosecutions is to be applied retroactively to all
cases . . . pending on direct review . . . .").
 Second, despite the fact that Bajakajian was decided
after the district court's decision in Beras's case, the error was
plain.  The Supreme Court has stated that "where the law at the
time of trial was settled and clearly contrary to the law at the
time of appeal -- it is enough that an error be 'plain' at the time
of appellate consideration."  Johnson v. United States, 520 U.S.
461, 468 (1997).
 Third, we think it clear that the error affects Beras's
substantial rights: his punishment is significantly greater than it
otherwise would have been.  An Eighth Amendment right not to be
subjected to excessive fines is a core constitutional right that we
deem substantial.   
 We thus must decide whether failing to correct this
"plain error" would cause "a miscarriage of justice" or would
"seriously affect[] the fairness, integrity or public reputation of
judicial proceedings."  Olano, 507 U.S. at 736.  Although we have
typically exercised our discretion to correct plain errors when an
innocent person is convicted and sentenced, "we have never held
that a Rule 52(b) remedy is only warranted in cases of actual
innocence."  United States v. Marder, 48 F.3d 564, 571 (1st Cir.
1995) (quoting Olano, 507 U.S. at 736).  Indeed, we have previously
found an excessive restitution order to constitute a miscarriage of
justice warranting correction.  See United States v. Gilberg, 75
F.3d 15, 22 (1st Cir. 1996).  We similarly find that a forfeiture
order that is so excessive as to violate the Eighth Amendment would
constitute a miscarriage of justice.  We therefore exercise our
discretion to find plain error under the circumstances of this
case.
 On remand, the district court is directed to consider the
analysis laid out in Bajakajian in setting a forfeiture order that
is not grossly disproportional to the gravity of Beras's offense.  
The court may consider: (1) that Beras's violation was not related
to any other illegal activities; (2) other penalties that Congress
has authorized for Beras's crimes as well as the maximum penalty
provided by the Sentencing Guidelines; and (3) the extent of the
harm caused by Beras's actions.  See Bajakajian, 118 S. Ct. at
2036, 1238-39; 3814 N.W. Thurman St., 164 F.3d at 1197-98.
                             III.
                          Conclusion
 Accordingly, we affirm defendant's convictions and
sentences with respect to Counts One and Three.  We vacate the
forfeiture order and remand to the district court for action
consistent with this opinion on Count Two.

</body>

</html>